DECISION
Defendant adjusted Plaintiffs' 2006 Oregon income tax return. Those adjustments included a denial of Plaintiffs' claim for the working family child care credit and the credit for dependent care expenses. Plaintiffs appealed. Trial was held by telephone February 1, 2008. Both Plaintiffs appeared and testified at the trial. Defendant was represented by Maribel Luna, an auditor with the Department of Revenue. For ease of reference, Plaintiffs will be referred to individually as Jaime or Inocencia, and collectively as Plaintiffs. Defendant will be referred to as Defendant or the department, where appropriate.
 I. STATEMENT OF FACTS
Plaintiffs have been married for approximately 24 years. They live together in Medford with five children under the age of 18, including two teenagers who were approximately 14 and 16 years old in 2006. Plaintiffs also apparently have two children over the age of 18 who may or may not be living at home, plus other relatives living in the area. The two youngest children, both girls, were approximately 5 and 6 years old in 2006. Noelia was born July 26, 2000, and Nayeli was born November 11, 2001. *Page 2 
Plaintiffs both worked in 2006. Jaime worked in Atlanta for most of the first three months of 2006 and then worked full-time in Oregon. According to information Defendant obtained from the employment department, Jaime had only 49 hours of reported employment in the months of January, February, and March 2006. The parties agree that Inocencia worked in Oregon on a fulltime basis all year. Jaime worked weekdays from 6 a.m. to approximately
3:15 p.m., and Inocencia worked between five and seven days a week, from roughly 9 a.m. to 6 p.m. Inocencia clearly worked all five weekdays; her work on the weekends is less clear to the court. Noelia and Nayeli were in school part of the day, [1] and then cared for by someone else while Plaintiffs were at work.
Plaintiffs filed a Schedule WFC with the department reporting a total of $2,675 of child care expenses in 2006. Plaintiffs submitted a single-page document signed by the alleged provider, Edith Cortez (Edith), reporting a total of 1,672 hours of paid child care in 2006, at a cost of $1.60 per hour, for a total of $2,675.20. Edith is the daughter of Jaime's first cousin. There are no receipts or canceled checks to substantiate the payments Plaintiffs contend were made to Edith. According to Jaime's testimony, he and Inocencia generally paid Edith in cash twice each month.
 II. ANALYSIS
ORS 315.262[2] provides a refundable credit for certain low-income taxpayers to partially offset the taxpayer's child care costs incurred for the purpose of allowing the taxpayer to work or attend school. The credit is commonly referred to as the working family child care credit. The statute provides in relevant part: *Page 3 
 "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)."
ORS 315.262(2).
ORS 316.078 provides for a nonrefundable credit[3] for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependent child or children. That credit is referred to as the dependent care credit. The dependent care credit is specifically tied to Internal Revenue Code (IRC) section 21(a)(1), the pertinent language being that the amount of the credit is "equal to the applicable percentage of the employment-related expenses (as defined in subsection (b) (2)) paid by such individual during the taxable year." Subsection (b)(2) of section 21 of the code, as well as the corresponding regulation (Treas Reg § 1.21-1(a)), require that the expenses be necessary to enable the taxpayer(s) to be gainfully employed.
Both credits are based on the amount of qualifying child care expenses incurred by the taxpayer each year so that the taxpayer(s) can go to work. The question in this case is whether Plaintiffs actually paid for child care and, if so, how much they paid. Plaintiffs bear the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427.
Plaintiffs have no independent documentary evidence to prove that they paid for child care; they have only their sworn testimony. The person who allegedly cared for their two daughters did not testify. Plaintiffs did not appear to be entirely forthright with the court when testifying, and there are conflicts with their testimony. For example, Jaime testified that Inocencia worked weekdays and "sometimes" on the weekends, whereas Inocencia testified emphatically that she worked seven days a week, from approximately 9 a.m. to 6 p.m. Additionally, on direct examination, Jaime testified that he paid for some child care on the weekends while he ran errands *Page 4 
but, when questioned on cross-examination, he testified somewhat equivocally that his son cared for the girls on the weekends when Inocencia was at work, which, according to Jaime, was infrequent.
Another problem with the evidence is that the reported hours of child care appear to be, at best, rough estimates, and at worst, outright falsehoods. For example, according to the testimony, the girls were at home weekday mornings with their mother who took them to school about 9 a.m. on her way to work. Jaime testified that Noelia left school each day at about 2:30 p.m., and that he picked the two girls up from the provider's house at about 4 p.m. If true, Noelia was only in child care approximately one and one-half hours each day, Monday through Friday. However, the provider's written statement indicates that Edith cared for Noelia three hours per day, Monday through Friday, about twice the amount supported by the testimony. Additionally, the reported amount of paid child care during the summer months increased only slightly, perhaps 40 hours per month, whereas the court's rough calculation suggests that the amount of care should have increased by approximately 200 hours per month, which is the amount of time the two girls were in school each month during the school year.
Plaintiffs did submit a written child care statement signed by Edith, but the court has concerns with the information contained in that statement. The court's main concern is that the information does not appear to make sense. The court has already addressed the problem with the reporting of child care during the summer months. Additionally, Jaime testified that he worked in Atlanta during the first three months of 2006, but the hours of child care Plaintiffs reported while Jaime was away are about the same, in fact, a little lower than when he was working in Oregon and picking the two girls up at around 4 p.m. each day after he got off work. With Jaime out of town and Inocencia working seven days a week until 6 p.m., it stands to reason *Page 5 
that Plaintiffs two young daughters would have spent more time at child care, but the evidence does not bear that out. When pressed on cross-examination, Jaime testified that he had a son and other family members around and that they would care for the children on weekends while he was away. That admission leads the court to question whether direct family members (i.e. children) or other relatives cared for the two girls all the time, and did so without pay. In fact, Edith, the reported provider, is Jaime's cousin's daughter. While it is possible that Plaintiffs paid Edith to care for the two girls, some form of substantiation — canceled checks or Edith's sworn testimony — might have bolstered Plaintiffs' case. Jaime testified that he and Inocencia do not have a bank account because he cannot read or write and she is only literate in Spanish. The lack of bank records makes alternate forms of substantiation (i.e., proof) such as contemporaneous receipts all the more important.
The court believes that the decision reached in Marks v. Department ofRevenue, TC-MD No 070124E (May 11, 2007), applies with equal force to this case. In Marks, the taxpayers were denied the credit for failure to meet the statutory burden of proof provided in ORS 305.427. The taxpayers paid cash for the alleged child care expenses and had no receipts or canceled checks. The taxpayers did have a letter from the alleged provider, but that provider did not testify at trial. The court ruled that a provider letter, by itself, was insufficient evidence to satisfy the statutory burden of proof. In such cases, stated the court, the provider should testify.
Plaintiffs have two children over the age of 18, plus other relatives living in the area, including their cousin Edith. They also had three older children living at home, two of which were roughly 14 and 15 years old in 2006. Given the absence of independent corroborating evidence, and Jaime's own testimony that his older children and other relatives did sometimes care for the two younger girls on weekends when he was either out-of-town, or in town but away from *Page 6 
the home running errands, the court is simply not persuaded by a preponderance of the evidence that Plaintiffs actually paid for child care in 2006.
 III. CONCLUSION
The court concludes that Plaintiffs have not adequately established that they paid for child care in 2006 in order for them to work. The court did not find the testimony credible because there were conflicting statements, the alleged payments were made in cash to a relative who did not testify, and the child care statement signed by the provider did not comport with reason. Accordingly, Plaintiffs' request for the working family child care credit and the credit for dependent care expenses for 2006 is denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and Defendant's disallowance of the two credits related to employment-related child care in 2006 stands.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on February 14,2008. The Court filed and entered this document on February 14,2008.
[1] Nayeli, the youngest child, was in kindergarten, and the older child Noelia was in grade school.
[2] All references to the Oregon Revised Statutes (ORS) are to 2005.
[3] Although the credit is nonrefundable, it can be carried forward to offset the taxpayer's tax liability for up to five subsequent tax years. ORS 316.078(5). *Page 1